# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| JULIE STAMPER,<br>*Plaintiff*<br><br>v.<br><br>BLUEBONNET TRAILS COMMUNITY SERVICES AND JONATHAN LEMUEL,<br>*Defendants* | Case No. 1:19-CV-749-SH |

## O R D E R

Before this Court are Defendants' Bluebonnet Trails Community Services ("Bluebonnet") and Jonathan Lemuel's Motion to Compel Arbitration, filed on August 22, 2019 (Dkt. No. 7); Bluebonnet's First Amended Motion to Dismiss, filed on October 17, 2019 (Dkt. No. 16); and the related response and reply briefs.

After the parties consented to have a United States Magistrate Judge preside over trial of this case, on January 10, 2020, the District Court transferred this case to the undersigned Magistrate Judge for all proceedings and entry of final judgment pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas.

### I.   BACKGROUND

On July 25, 2019, Julie Stamper ("Plaintiff") filed this employment discrimination lawsuit against Bluebonnet, her former employer, and her supervisor, Jonathan Lemuel ("Lemuel") (collectively, "Defendants"). Plaintiff worked as a Jail Diversion Coordinator for Bluebonnet from February 2017 until she was terminated in April 2018. Plaintiff alleges that Lemuel repeatedly sexually harassed her and discriminated against her because of her gender. Plaintiff also alleges that she was retaliated against after she reported the harassment and discrimination to Bluebonnet.

Plaintiff's First Amended Complaint alleges gender discrimination, sexual harassment, hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); retaliation under the Family Medical Leave Act, 29 U.S.C. §§ 2612, 2615; gender discrimination and retaliation under Section 21.001 of the Texas Labor Code; and a Texas claim for assault and battery.

On August 22, 2019, Defendants filed the instant Motion to Compel Arbitration, asking this Court to enter an order compelling Plaintiff to arbitrate her claims against Defendants based on the arbitration agreement contained in the parties' employment contract. Defendants argue that this case must be dismissed or stayed because the arbitration agreement between the parties requires Plaintiff to arbitrate the claims asserted in this lawsuit.

## II. ANALYSIS

### A. The Law of Arbitration

"Under the Federal Arbitration Act [FAA], parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations and citations omitted). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Although there is a strong federal policy favoring arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Thus, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework to determine whether a dispute must be arbitrated. First, the court must determine "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). This initial question is for the court. *Kubala*, 830 F.3d at 201; s*ee also 20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718 (5th Cir. 2019) ("[I]f parties dispute whether they in fact ever agreed to arbitrate at all, such questions of contract formation are considered 'gateway' issues that presumptively must be decided by courts, not arbitrators.") (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258

(5th Cir. 1996). Under Texas law,[1] a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012). When an arbitration agreement is imposed during employment, the question is whether the arbitration agreement is a valid modification of the terms of employment. *Kubala*, 830 F.3d at 203. "To demonstrate a modification of the terms of at-will employment, the proponent of the modification must demonstrate that the other party (1) received notice of the change and (2) accepted the change." *Id.* (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002)). Texas law also requires that the party moving to compel arbitration show that the agreement meets all of the requisite contract elements. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).

If the court finds there is a valid agreement to arbitrate, the court moves on to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). While this second question is usually a question for the court, if the arbitration clause contains a valid delegation clause, the court must submit the question of whether the claim falls within the arbitration agreement to the arbitrator. *Kubala*, 830 F.3d at 202.

Once the court determines there is a valid arbitration agreement, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir.

---

[1] The parties do not dispute that Texas law applies in this case.

2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers*, 363 U.S. at 582-83). "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x. 310, 315 (5th Cir. 2012). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

**B. The Arbitration Agreement at Issue**

First, the Court must determine whether the parties entered into an arbitration agreement. *Kubala*, 830 F.3d at 201. Plaintiff and Bluebonnet signed and executed an At-Will Employment Agreement ("Employment Agreement") which contains, in relevant part, the following arbitration clause:

> Any controversy or dispute between Employee and Bluebonnet Trails Community Services or any of its constituent members, employees, officers, agents, affiliates, or benefit plans, arising from or in any way related to Employee's employment by Bluebonnet Trails Community Services, or the termination thereof, including but not limited to the construction or application of this Agreement, shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association ("AAA") under its Employment Rules then applicable to the dispute. It is the intent of the parties hereto that all disputes between them must be arbitrated expressly including, but not limited to, any dispute about the interpretation, validity or enforcement of this Agreement, any claim of employment discrimination, such as, but not limited to, discrimination based on age, disability, national origin, race, or sex, any claim for compensation or benefits, including any claim under the Fair Labor Standards Act, Texas Payday Act or other federal or state statute or regulation, Family Medical Leave Act (FMLA) or

5

> related state law or any related regulation, National Labor Relations Act, Americans with Disabilities Act, as amended, or any related state law or regulation of any sort or any other claim, whether contractual, common-law, or statutory, arising out of, or in any way related to, Employee's Agreement and employment with Bluebonnet Trails Community Services, the termination thereof, or any other matter incident thereto.

Dkt. No. 7-1 at § 3.1 (the "Arbitration Agreement").

The Employment Agreement also provides the following:

> The parties agree this Agreement embodies all agreements existing between Employee and Employer and that no representative of either party shall have the power to alter or waive any of the terms or conditions hereof except in a separate writing, duly signed by both parties, and then attached hereto.

*Id.* at § 4.7.

Plaintiff does not dispute that she entered into the Arbitration Agreement and that she agreed to arbitrate all disputes arising under the Employment Agreement, including employment discrimination claims. The Court therefore finds that the parties entered into an arbitration agreement. *See Doe v. Virginia Coll., LLC*, 2019 WL 1131424, at *1 (W.D. Tex. Mar. 12, 2019) (finding that parties entered into an arbitration agreement where plaintiff did not dispute that she entered into the arbitration agreement).

The Court next must determine whether the claims in this lawsuit fall within the Arbitration Agreement. Plaintiff does not dispute Defendants' assertion that her claims are covered by the Arbitration Agreement. As quoted above, the Arbitration Agreement clearly provides that "[a]ny controversy or dispute," including "any claim of employment discrimination" between Plaintiff and Bluebonnet or any of its employees "arising from or in any way related to" Plaintiff's employment or termination by Bluebonnet, "shall be resolved exclusively by final and binding arbitration." Dkt. No. 7-1 at § 3.1. Accordingly, Plaintiff's claims in this lawsuit are covered by the Arbitration Agreement. *Cf. Nguyen v. Chi Man L.P.*, 2013 WL 12131203, at *4 (W.D. Tex.

May 28, 2013) (finding that claims under Fair Labor Standard Act were subject to arbitration clause where arbitration clause covered such claims and plaintiff did not dispute that her claims fell within the scope of the agreement).

## C. Plaintiff's Request for Discovery

Although Plaintiff does not dispute that she entered into an Arbitration Agreement that covers all of the claims asserted in this lawsuit, she nevertheless argues that "[t]he motion to compel arbitration should be denied at this point in time as premature as Defendant has refused to provide Plaintiff with a copy of any other agreement that Plaintiff has signed with Defendant or acknowledged receipt of, such as for example, an employee handbook." Dkt. No. 9 at p. 2. Plaintiff contends that "[t]he arbitration agreement can potentially be modified by another agreement or the handbook which could make it unenforceable." *Id.* Thus, Plaintiff asks the Court to deny the Motion as premature and order the Defendants "to provide to Plaintiff any documents she signed, agreed to or acknowledged receipt of, including any employee handbook, in order to determine whether or not the arbitration agreement is actually enforceable." *Id.* at p. 2-3. As Defendants frame her argument, "Plaintiff seeks to postpone the Court's ruling on Defendants' motion so Plaintiff can engage in pre-arbitration discovery in the hope Plaintiff will find some unidentified document to oppose relief under the parties' binding agreement." Dkt. No. 12 at p. 1.

Plaintiff is not entitled to such pre-arbitration discovery. First, the Court notes that the Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. 1, 24-25 (1983). As noted above, the party opposing arbitration bears the burden of establishing that the agreement is unenforceable. *See Carter*, 362 F.3d at 297. Here, Plaintiff has failed to assert any defense to the Arbitration Agreement beyond her contention

7

that the Arbitration Agreement could have been modified by some other agreement. Notably, Plaintiff fails to allege that she actually signed any subsequent agreement that would have modified the Arbitration Agreement. Plaintiff's speculative allegations regarding a potential modification are insufficient to create an issue of material fact regarding the existence or validity of the Arbitration Agreement.

Fifth Circuit case law supports this conclusion. In *Ameriprise Fin. Servs., Inc. v. Etheredge*, 277 F. App'x 447, 448 (5th Cir. 2008), after the defendant filed a motion to compel arbitration in the district court, the plaintiff asserted that he should be permitted "discovery prior to any ruling" on the motion to compel. Specifically, the plaintiff sought a discovery period "to conduct a handwriting and/or signature analysis, obtain information relating to the circumstances involved in the production of said arbitration clause, and ascertain other documentation and information relating to the arbitration clause in question." *Id.* The district court denied plaintiff's request for discovery, finding that the plaintiff did not reasonably require discovery to present his position as to the validity of the arbitration agreement. *Id.* The Fifth Circuit affirmed, ruling that the requested discovery was not necessary to prove the existence of a valid agreement to arbitrate between the plaintiff and the defendant, reasoning as follows:

> In his requests for discovery in the district court, Etheredge contended that he should be permitted to conduct discovery "in order to obtain information in support of his claim that the subject arbitration clause is invalid" due to fraud in the factum, fraud in the inducement, lack of mutuality, and unconscionability. However, Etheredge never suggested what evidence relevant to these defenses he suspected to find through discovery. Indeed, the only specific discovery request that Etheredge submitted to the district court was for a handwriting analysis. He maintained that a handwriting analysis was necessary because he did not "recall" signing or executing the document. However, as the district court noted in its first order denying the discovery request, Etheredge never denied that the signatures on the IRA Application or the Service Agreement were his own. Nor did he even suggest circumstances which might

8

> lead one to doubt that those signatures were his, such as forgery by Ameriprise or one of its brokers. . . . Thus, under these circumstances, the district court did not abuse its discretion in denying Etheredge's requests for discovery prior to granting Ameriprise's motion to compel arbitration.

*Id.* at 449-50. Like the plaintiff in *Etheredge*, Plaintiff has failed to demonstrate the need for pre-arbitration discovery in this case.

In addition, Plaintiff has failed to demonstrate the need to engage in pre-arbitration discovery beyond the discovery provided by the parties' Arbitration Agreement. *See* Dkt. No. 7-1 at § 3.2.2. The FAA calls for "an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses*, 460 U.S. at 22. "It was 'Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Bell v. Koch Foods of Miss., LLC*, 358 F. App'x 498, 500-01 (5th Cir. 2009) (quoting *Moses*, 460 U.S. at 22). In light of this policy, district courts routinely deny requests for pre-arbitration discovery. *See, e.g.*, *Diggs v. Citigroup, Inc.*, 551 F. App'x 762, 766 (5th Cir. 2014) (denying request for pre-arbitration discovery); *Bell*, 358 F. App'x at 501 (same). Thus, in *Bell*, the Fifth Circuit rejected the plaintiff's proposition that the Court should "adopt a rule that anytime a party bears the burden of proof, and is either trying to compel or defeat arbitration, then there is a compelling reason for discovery." 358 F. App'x at 501. The Court reasoned that "[s]uch a broad rule would defeat the FAA's requirement of summary and speedy disposition of motions and petitions to enforce arbitration clauses." *Id.*; *see also Hires Parts Serv., v. NCR Corp.*, 859 F. Supp. 349, 353 (N.D. Ind. 1994) ("It is obvious that permitting discovery on two levels, district court level and arbitration level, is a great waste of resources and frustrates the basic purpose of the Arbitration Act which is to avoid the delay and expense of litigation . . . .").

Because Plaintiff has failed to demonstrate the need for pre-arbitration discovery in this case, her request for such discovery is **DENIED**.

### III. Conclusion

Defendants have established that the parties entered into the Arbitration Agreement, and Plaintiff has failed to sustain her burden to demonstrate that the Arbitration Agreement is invalid or that her claims are outside of the agreement's scope. *See Carter*, 362 F.3d at 297. Accordingly, Defendants' Motion to Compel Arbitration (Dkt. No. 7) is **GRANTED**.

Although Section 3 of the FAA directs district courts to stay a case pending arbitration, this court is bound by Fifth Circuit precedent "which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'" *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 (5th Cir. 2013) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see also Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018) ("Some circuits have held that district courts must stay a case when all claims are submitted to arbitration, but this circuit allows district courts to dismiss such claims outright."). Because the Court finds that all of the claims raised in this lawsuit are governed by the broad Arbitration Clause at issue, Plaintiff's lawsuit is **HEREBY DISMISSED** with prejudice. Defendants' Motion to Dismiss is **DISMISSED** as **MOOT**.[2] A separate Final Judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SIGNED** on January 30, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

---

[2] *See Grether v. S. Point Pontiac/Cadillac*, 2014 WL 1350907, at *3 (W.D. Tex. Apr. 3, 2014) ("Because the Court grants the motion to compel arbitration and dismisses the case with prejudice, South Point's motion to dismiss is DISMISSED AS MOOT.").